## REQUIREMENTS AS TO CATTLE GUARDS.

[Circuit Court of Pike County.]

THE NORFOLK & WESTERN RY. CO. v. C. A. VALLERY.

Decided, May, 1905.

*Negligence—Railways—Requirements as to Cattle Guards—Exception to the Statute—As Incorporated Therein by the Supreme Court.*

In order to complete the exception written by the Supreme Court into the statute providing that cattle guards shall be built at all "crossings, road crossings, street crossings, and other crossings without any exception whatever," it is necessary that there be present the three elements, necessity of the public, necessity of the railroad company, and necessity of its employes that such guards be omitted.

WALTERS, J.; CHERRINGTON, J., and JONES, J., concur.

The defendant in error by his petition against the defendant below, the Norfolk & Western Ry. Co., alleges that the railway company was a corporation operating its road through the village of Piketon, Pike county, and that the railway company did not have erected either fences or cattle-guards north of its depot at Piketon, nor south thereof, and that the plaintiff in March, 1904, was the owner of two horses that strayed from his premises, and by reason of the defective fences and cattle-guards upon the railroad, his horses strayed thereon and proceeded down the track of the N. & W. Ry. to a point south of the depot, where they were run down and killed.

The defendant admits it is a corporation and operating a railroad and denies every other allegation, and further says that said horses entered upon the right of way at a public station yard, which was necessarily uninclosed in order that the public, as well as the railroad, could get to and from the station building in loading and unloading cars, and in using its side-tracks and yards, and that said horses were killed within the limits of said yards and depot grounds.

A trial was had in the court of common pleas before a jury and a verdict returned for the plaintiff therein.

There is but one error relied upon by the plaintiff in error, upon which it seeks to reverse the judgment of the lower court, and that is the alleged error appearing upon the record in the form of a charge requested by the defendant below to be given to the jury before argument.

The statute of the state, Section 3324 of the Revised Statutes, requires the railroad to fence, also requires them to build a cattle-guard at all crossings, road crossings, street crossings and other crossings without any exception whatever, and hence includes all streets, lanes and alleys in the village. The Supreme Court, however, in the case of *Railroad Co.* v. *Newbrander,* 40 Ohio St., page 15, wrote into this statute an exception, occurring from the necessities of the railroad and the public and its employes.

In the first subdivision of the syllabus the Supreme Court makes use of this language:

"This statute may be construed as allowing exceptions required by public necessity and convenience, and the proper use of a station yard by the company."

The second subdivision of the syllabus is as follows:

"When the company is relieved from this requirement, for the reason above, it is its duty to construct and maintain cattle-guards across its right of way and grounds at the first points from the highway, which will not interfere with the necessities and convenience of the public and the company."

By the instructions asked on behalf of the defendant company below, such instructions as requested would require the jury to bring a verdict for the defendant, if the jury found from the evidence that either one of three things existed: Necessity of the public, necessity of the employes of the railroad company, or necessity of the company.

In the case already alluded to, if the railroad company was relieved from performing this duty only on this requirement, and the company required that the depot grounds and yards remain open and unobstructed, the matter that counsel for the defendant raised, that if the defendant's testimony showed that from the necessity of the railroad employes that this road should

be kept open, and that no cattle-guards should be used where it is alleged these horses passed over, that that was sufficient, and that it was not necessary for the jury to find that it was a necessity to the public or to the company.

If counsel for the plaintiff in error is correct in their contention, there is error in this record, otherwise there is not.

The facts disclosed by the record are, that the horses escaped from his farm some three miles from the railroad without any negligence on his part, and that they took the railroad at the crossing on the public road known as the Jackson Hill crossing. And some of the testimony tends to show that these horses, after passing over the Jackson Hill crossing, passed down the railroad, as was evidenced by the witnesses' testimony; that they tracked the horses down the railroad to the place where they were injured below the depot and killed. There is other testimony tending to show that the horses passed over the Jackson Hill crossing and into the village of Piketon, coming onto the railroad at another point.

The question therefore to decide is, under the facts in the case, whether or not it is necessary for the railroad, in order to relieve itself of liability upon its switch and depot grounds, that these three elements be shown as have been present in an instruction to the jury.

In Thornton on "Railroad Fences and Private Crossings," page 158, the author quotes from an Iowa Supreme Court case, in which the court says:

"The theory of exemption from the statute requiring fences has always been founded upon the relation of the company to the *public*, and not to any other construction."

Again the Supreme Court of Indiana has been quoted on page 161:

"These exceptions have been made, not to advance the private interests of the railroad corporations, but to promote the *public* good by enabling the corporation to discharge their duty to the *public*. These exceptions exist only in cases where public necessity is shown."

There is quoted another citation, and the author comes to the conclusion himself that the exceptions given from the decisions are constructions alluded to, and hence, made on behalf of the *public*. But as I have already quoted from our Supreme Court, the three elements are necessary to complete the exception, and hence there seems to be a mutuality of interests required on behalf of the public and railroad company.

But then it is not alone the employes that are to be considered, nor the company, but the public. Hence it would seem from these observations that the railroad company, when it proves in a case as in this case, that it was necessary to have the road open and to have the cattle-guard away from this public highway, as a matter of necessity for the employes, then the railroad company only had proved one of the elements necessary to its complete exoneration. And in coming to that conclusion the rest seems easy.

These instructions did not embody the three elements. The public was put in, but not included with the other two elements. The record discloses that the railroad company did prove that it was necessary that the cattle-guard should be constructed so far away from persons using the road to serve the interest of the employes, that it was necessary for them to work on the trains without having the cattle-guards that the testimony showed existed there, but there was no testimony as to the public necessity or interest.

The question was properly presented to the jury by the court below, the court giving very full instructions to the jury in regard to cattle-guards and fences. Instructing the jury to find where the horses came upon this track, if the three elements existed, the company would not be held liable, and our Supreme Court has determined in the case of *Railroad* v. *Newbrander, supra,* that it is a fact for the jury to determine, and that it is necessary for the railroad to construct and maintain cattle-guards at the first point below crossing that will not interfere with the public, if it does so interfere at the crossing. In this case the defendant introduces evidence pointing only to one of these propositions.

Now, according to the evidence, the depot at Piketon is about at a point equi-distant from the cattle-guard on the north and the cattle-guard on the south, according to the testimony below, and above the two crossings about half a mile, or a little over. The testimony further discloses that from the water tank to the Jackson Hill crossing is a distance between 500 and 600 feet; that the space between the depot is the only place the public uses for loading and unloading, and the driving of vehicles for the purpose of taking merchandise there and for removing the same therefrom. Below the depot—the testimony shows that below Narrow street—it is not used for the purpose of receiving or discharging freight. But now that was all before the jury. These distances, the amount of side-track, the amount of freight track on the west side, the location of the south crossing, the cattle-guards, the location of the Jackson Hill road and the cattle-guard north of that, the whole topographical situation there, with reference to these tracks and side-tracks, and depot and buildings were all before the jury. They must determine, and did determine, these questions of fact, and, therefore, we can not say that there was error in the court refusing the jury said instruction. It is, therefore, the judgment of this court that the judgment of the lower court be affirmed.